United States District Court
Southern District of Texas
**ENTERED**
March 09, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN RAY MELCHER | § | |
| and MELCHER HOLDINGS, INC. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-14-288 |
| | § | |
| SMALL BUSINESS LOAN SOURCE, | § | |
| LLC, ET AL. | § | |

### REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable George C. Hanks, Jr., United States District Judge, are various Rule 12(b)(6) Motions to Dismiss by Defendants Matthew Wiggins, The City of Kemah, Jack Fryday, Barbara Roberts, Alana Croker, Mark Foster, Alan Franks, Kathy Pierce, Dick Gregg, Jr. and Dick Gregg, III. The Motions seek the dismissal of all claims asserted against these Defendants by Plaintiffs, John Ray Melcher and Melcher Holdings, Inc.. Having considered the Parties submissions, the Court now issues this Report and Recommendation.

The gravamen of the Plaintiffs' complaint is that Melcher Holdings, Inc., (MHI), and indirectly Melcher, were swindled out of the ownership of a valuable parcel of waterfront property in Kemah, Texas, by Wiggins and other co-conspirators so that Wiggins could acquire the property and properties of others and reap substantial economic benefit by leasing the properties to developers of restaurants, other businesses and, hopefully, casinos.

According to Plaintiffs, by the mid-1990's Wiggin had established himself as the equivalent of a "mafia kingpin" and the leader of his "corrupt enterprise, the City of Kemah." In that allegedly powerful role Wiggins was able to convince all the other named Defendants to periodically assist in his plans to illegally and tortiously acquire MHI's property. The relevant factual allegations must be summarized.

In 2008, MHI owned waterfront property in Kemah, located at 310 Texas Avenue, on which the Plaintiffs operated a successful motorcycle and water craft rental business from their building. By 2008, Wiggins had become the mayor of Kemah. During the landfall of Hurricane Ike on September 13, 2008, MHI's property, and other properties desired by Wiggins were damaged by flood waters. Wiggins then realized he had the golden opportunity to bring his scheme to fruition. Wiggins had Fryday, the City's contractual building inspector of Space City Inspections, LLC and J. Fryday Consulting Services, LLC, and Roberts, the City's Flood Plane Manager, falsely declare that MHI's property had been damaged by more than 51% meaning the building could not be repaired. Instead, the building lost its "grand fathered" status and had to be demolished. As a consequence, any new structure had to meet FEMA guidelines by raising the lowest floor level to 11 feet. In addition to Fryday and Roberts, Pierce, the City Secretary, and the two Greggs, city attorneys, joined Wiggins's condemnation fraud.

MHI recovered about $200,000.00 from its insurance company for damages to its inventory.  Fearing that the property could be lost because of the lack of business income, Plaintiffs tendered the money to their mortgagee, Small Business Loan Source, to be entrusted to Ballenger, one of SBLS's vice-presidents, to pay the monthly mortgage payments as they came due.  Ballenger, however, was convinced by Wiggins to not make the payments so that Plaintiffs would be in default.  In the meantime, Plaintiffs secured a loan for about $955,000.00 to finance the construction of a new business.  However, unknown to Plaintiffs, Ballenger had their property posted for foreclosure.  None of the required notices were ever served on Plaintiffs and on June 2, 2009, the Trustee's sale took place.  The following day, Ballenger informed a shocked Melcher that SBLS now owned the property.  Shortly thereafter, Foster, acting as a straw purchaser for Wiggins, bought the property from SBLS.  Wiggins got Croker, a real estate agent, to help Foster close the sale.

On July 23, 2009, SBLS sued the Plaintiffs for the mortgage deficiency.  Plaintiffs hired O'Conner and his firm to represent them.  Once again, Wiggins intervened.  This time he paid O'Conner to neglect the lawsuit and convince Melcher to declare bankruptcy to discharge the indebtedness.  Melcher filed a Chapter 7 Petition, but MHI did not.  Apparently, after Melcher's bankruptcy was concluded, SBLS's lawsuit was dismissed, perhaps to avoid the truth being disclosed.

In the meantime, Fryday and Roberts withdrew the 51% damage finding and issued a permit to repair the building. In November 2009, Melcher drove by the property[1] and noticed that the red condemnation sign had been removed and replaced by a building permit to repair the building issued to either Foster or to Franks, a restauranteur who had joined Wiggins's conspiracy in order to repair the building and open a restaurant to replace the one he had lost to the hurricane. The estimate for repairs was a mere $13,000.00.

On December 9, 2009, Plaintiffs spoke with Worrich and Speights of the Speights law firm about suing TWIA for windstorm damages to the property. Suit was filed on September 13, 2010, and ultimately settled for about $200,000.00. Following the deduction of the attorney's fees and costs about $120,000.00 remained. That money was not paid to MHI or Melcher because Worrich contacted the attorney for First Bank, the assignee of SBLS's note, and thereafter was convinced by Ballenger to forge the settlement checks and funnel the money to First Bank to be applied against the remaining deficiency.[2]

In February 2011, Plaintiffs learned that a Houston reporter and the FBI were investigating Wiggins's scheme to swindle certain hurricane victims out of their property. Plaintiffs followed the investigation and another investigation being performed by a local builder.

---

[1] In a footnote in their Amended Complaint, Plaintiffs state that Melcher drove by the property on September 1, 2009, but the Court believes that to be a mistake.

[2] Plaintiffs alleged that Wiggins was also involved in the schemes of O'Connor and Worrich, but for the same reasons their Motions must be granted, Wiggins has no liability either.

In May 2011, Wiggins was voted out of office. In 2012, Wiggins sued several people for defamation claiming their remarks had cost him the election. Finally, in early 2013, Melcher concluded that MHI had been victimized by Wiggins's illegal conspiracy after talking to some of the witnesses in the defamation lawsuit.

On October 27, 2013, Melcher sued Wiggins and the City of Kemah alleging violations of RICO and claims for civil rights violations; civil conspiracy; conversion; theft liability; intentional infliction of emotion distress; and negligent hiring, supervision, retention and/or disciplining of employees.

During the pendency of that suit, in June 2014, Plaintiffs hired their current counsel to find out what had happened to the TWIA settlement funds. Worrich delayed providing counsel with the information, but ultimately, counsel uncovered what had occurred. Unfortunately, Plaintiffs assert that it was then too late to set the settlement aside or challenge the wrongful foreclosure.

In the Plaintiffs' 2014 suit against Wiggins and the City, the parties consented to have this Court preside. Dispositive motions were filed and this Court ultimately found all of Melcher's claims time-barred and dismissed the Complaint. Melcher's post-judgment Motion was denied on August 25, 2014. On August 26, 2014,[3] Plaintiffs filed

---

[3] Following the filing of this lawsuit, Plaintiffs, on September 24, 2014, filed a Notice of Appeal in the earlier case. The Notice was untimely and the appeal was dismissed for lack of jurisdiction on January 13, 2015.

the instant action in state court. The case was removed and the Defendants' dispositive motions are ripe.

The Plaintiffs' current action is, in relevant part, nothing more than a desperate effort to pursue the same claims asserted, or that could have been asserted, in the previously dismissed action. The only material change is the addition of defendants not named in the original complaint as participants in the underlying conspiracy and the claims arising therefrom. The identity of some of those Defendants and their involvement, including Fryday, Roberts and Franks, were even known to Plaintiffs when the first suit was filed. Accordingly, there seems to be no reasonable excuse for the Plaintiffs' failure to investigate the propriety of the foreclosure and timely sue the alleged co-conspirators in that first action. Cf. Gambocz v. Welencsics, 468 F.2d 837, 842 ($3^d$ Cir. 1972).

In the opinion of this Court, all claims asserted by Plaintiffs relating to the loss of the property are barred by *res judicata* whether raised or not by the Defendants in their various Motions. See United Home Rentals, Inc. v. Texas Real Estate Commission, 716 F.2d 324, 330 (5th Cir. 1983) (Recognizing that "in the interest of judicial economy, *res judicata* may be properly raised by a district court *sua sponte*, particularly where both actions are brought in the courts of the same district," or, as here, the very same court.)

*Res judicata*, or claim preclusion, applies where (1) the preclusive judgment was a final judgment on the merits by a court of competent jurisdiction; (2) the parties to both actions are identical or in privity with each other; and (3) the claims raised in the second

action are based on the same claims as were raised or could have been raised in the first action. Amstadt v. U.S. Brass Corp., 919 S.W. 2d 644, 652 (Tex. 1996), see also, Southmark Corp. v. Coopers & Lybrand, 163 F.3d 925, 934 (5th Cir. 1999). The first prong is clearly met: "A decision based on the statute of limitations is a decision on the merits for *res judicata* purposes." Mathis v. Laird, 457 F.2d 926, 928 (5th Cir.) cert. denied, 409 U.S. 871 (1972). So is the third: the newly raised claims could have been raised in the prior suit. As to the second, Wiggins and the City were named Defendants in the earlier suit and since all of the newly named Defendants allegedly involved in the wrongful foreclosure are sued as co-conspirators, it seems they are in privity with Wiggins and one another for *res judicata* purposes. Cf. New York Pizzeria, Inc. v, Syal, 53 F.Supp. 3d 962, 970 (S.D. Tex. 2014) (Costa, J.)

There is no per se rule that co-conspirators are always in privity, rather the circumstances of each case must be examined in making the privity determination for claim preclusion. Getty Oil Co. v. Insurance Company of North America, 845 S.W. 2d 794, 800 (Tex. 1992). One way in which Texas courts find privity is when the non-party co-conspirators' interest could be represented by a party to the first action, Amstad, 919 S.W. 2d at 653, and clearly Wiggins was able to do so: Wiggins successfully raised the affirmative defense of limitations.

7

In a conspiracy case if the central object of the conspiracy has been accomplished the stature of limitations begins to run from the date its object has been attained. Poster Exchange, Inc. v. National Screen Service Corp., 517 F.2d 117, 126 (5th Cir. 1975), Cf. United States v. Etheridge, 424 F.2d 951, 964 (6th Cir. 1970). Later events designed only to conceal the accomplishment are not actionable. Grunewald v. United States, 353 U.S. 391 (1957). Since the central object of the conspiracy to acquire MHI's property had been accomplished by the known foreclosure on June 2, 2009, this Court held that the discovery rule did not apply and that the initial action, filed on October 27, 2013, was time-barred. That same affirmative defense is now equally available to all of these named Defendants in this action and it would be a waste of judicial resources to re-litigate that issue any further.

For the foregoing reasons, this Court is of the opinion that (1) the Motion to Dismiss (Instrument no. 62) of the City of Kemah; Matthew Wiggins, Jr.; Jack Fryday; Dick H. Gregg, Jr.; Dick H. Gregg, III; Kathy Pierce; Alana Croker; Mark Foster; and Barbara Roberts should be granted; (2) the Motion to Dismiss (Instrument no. 80) of Space City Inspections, LLC and J. Fryday Consulting Services, LLC should be granted; and (3)the Motion to Dismiss (Instrument no. 63) of Alan Franks should be granted.

It is, therefore, the **RECOMMENDATION** of this Court that those Motions (Instrument nos. 62, 80 and 63) be **GRANTED** and that all claims asserted against these Defendants for their roles in the alleged conspiracy to acquire MHI's property be **DISMISSED**.

Because Plaintiffs were recently afforded the opportunity to amend their Complaint in order to avoid the earlier round of dispositive motions it is the further **RECOMMENDATION** of this Court that the dismissals be **WITH PREJUDICE**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **March 23, 2016**, to file written objections.  The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this ____9th____ day of March, 2016.

_____
John R. Froeschner
United States Magistrate Judge